HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
Nicole B. Gage (SBN 318005)
ngage@hoyerlaw.com
Christina England (SBN 330465)
cengland@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA  94114
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
JENNIFER SMITH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER SMITH,<br><br>                              Plaintiff,<br><br>                    vs.<br><br>LUMENIS, INC. and DOES 1-25,<br><br>                              Defendants. | Case No.<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br>**(1) Disability Discrimination in Violation of the Fair Employment and Housing Act of 1959 ("FEHA")**<br>**(2) Failure to Accommodate in Violation of FEHA**<br>**(3) Failure to Engage in the Interactive Process in Violation of FEHA**<br>**(4) Retaliation in Violation of FEHA**<br>**(5) Violation of California Family Rights Act ("CFRA") Rights**<br>**(6) CFRA Rights Retaliation**<br>**(7) Family and Medical Leave Act ("FMLA") Interference**<br>**(8) FMLA Retaliation**<br>**(9) Retaliation in Violation of Labor Code §1102.5**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jennifer Smith, (hereinafter "Ms. Smith" or "Plaintiff") brings this amended action against Defendant Lumenis, Inc. ("Lumenis" and/or "Defendant") and DOES 1-25 (collectively "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff Jennifer Smith worked as a Sales and Marketing Manager in the Service Contract Inside Sales team for Lumenis and is known within the company and amongst her peers as an outstanding performer.

2.    Unfortunately, when Ms. Smith was diagnosed with an aggressive autoimmune disease and lymphedema and required an accommodation to treat her disability, Lumenis failed to accommodate Ms. Smith by not allowing her to take intermittent FMLA leave per her doctor's orders, without providing any justification for why such accommodation would cause an undue hardship. Lumenis also failed to engage in a good faith interactive process with Ms. Smith to determine reasonable accommodations that would allow her to perform her job duties, and ignored Ms. Smith each time she asked to discuss potential accommodations.

3.    The company discriminated and retaliated against Ms. Smith on the basis of her disability, and for taking leave, by holding her to different standards than others, disciplining her, demoting her to a sales position, decreasing her compensation, and warning her that she was underperforming while she was on approved medical leave.

## PARTIES

4.    Plaintiff was, at all relevant times herein, a resident of the State of California and employed by Defendant Lumenis to work as a Sales and Marketing Manager at its San Jose campus.

5.    Defendant Lumenis is a medical equipment company headquartered in Israel. At all

FIRST AMENDED COMPLAINT                                                                      2

1  relevant times, Defendant was Plaintiff's employer.

2  **JURISDICTION AND VENUE**

3  6.     Jurisdiction is founded upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. The

4  amount in controversy is over $75,000. Plaintiff is a citizen of the State of California, while

5  Defendant is a citizen of Israel and Delaware. This Court has supplemental jurisdiction over

6  Plaintiff's California state claims pursuant to 28 U.S.C. § 1367.

7  7.     Jurisdiction is also founded upon federal question jurisdiction pursuant to 28 U.S.C.

8  § 1331. This action arises under the Family Medical Leave Act, 29 U.S.C. § 2601.

9  8.     Essentially all events giving rise to Plaintiff's claims arose in the County of Santa Clara,

10  California, and Defendants actively conduct business in California. Therefore, the proper

11  venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

12  9.     Plaintiff is informed and believes and thereon alleges that at all times mentioned in

13  this Complaint, Defendants Lumenis and DOES 1 through 25, and each of them, were the

14  agents, employees, servants, parent companies, subsidiaries, joint ventures, partners,

15  and/or co-owners or successive owners of the other Defendants named in this Complaint

16  and that at all times, each of the Defendants was acting within the course and scope of said

17  relationship with the other Defendants.

18  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

19  10.    Plaintiff filed a timely charge of discrimination against Defendant with the U.S. Equal

20  Employment Opportunity Commission ("EEOC"). Plaintiff received a right-to-sue from the

21  EEOC dated October 14, 2021, and has commenced this action in a timely manner.

22  **FACTUAL ALLEGATIONS**

23  11.    Plaintiff is a seasoned Aesthetic Sales Manager who has led multiple successful,

24  award-winning sales teams throughout her career. She was hired by Lumenis in May 2018

**FIRST AMENDED COMPLAINT**                                                                 3

to build an Inside Sales team from the ground up to sell service contracts (extended warranties) for Medical Laser equipment. Plaintiff is known within the company and amongst her peers as an outstanding performer.

12.     As a Sales and Marketing Manager, Ms. Smith oversaw bookings for the US, but also carried individual responsibility for covering 50% of the North Central Region, along with her management team counterpart, Todd Kowalski.

13.     Over the course of 2018, Ms. Smith successfully hired, trained, onboarded, and led a team of five direct reports to grow the company's bookings from $24 million to $34 million.

14.     Given her immediate success and growth, in 2019 Ms. Smith was invited to share her model and to train AMEA ("Asia, Middle-East, and Africa") and APAC ("Asia-Pacific") to support the rollout of the same Inside Sales Team structure for these international offices.

15.     As a star performer and leader, Ms. Smith was invited to attend the executive retreat to Gettysburg in August 2019.

16.     Ms. Smith ended Q4 of 2019 at an astounding 246% to plan in the North Central region, and 118% to plan for the U.S. Annual Service contract bookings: a company-wide record. She personally negotiated with three national accounts and directly managed all phases of the sale from inception to close. Ms. Smith also led her direct reports to similar successes in their own regions.

17.     In February 2020, Ms. Smith began experiencing health issues.

18.     In March 2020, the office went remote in response to the rapidly spreading and deadly COVID-19 virus. Ms. Smith also began caring full-time for her adult son with profound Autism whose therapy and caretaking services were suspended due to COVID-19.

19.     Nevertheless, Q1 of 2020 ended with Ms. Smith's personal sales at 106% to plan in

**FIRST AMENDED COMPLAINT**                                                                                       4

1    the North Central region, and $7.4 million in Bookings for the U.S. Ms. Smith was paid

2    commission per her 2019 compensation plan.

3    20.    By May 2020, Ms. Smith had fallen severely ill and was diagnosed with an

4    autoimmune disorder. Her body was rejecting her daily medication, resulting in loss of

5    cognitive function, vision impairment, extreme fatigue, and crippling lymphedema in her

6    neck, shoulder, and hands, and she was placed on an immediate medical leave.

7    21.    Ms. Smith took FMLA leave for six weeks, beginning on May 16, 2020.

8    22.    The lead team member, Hamza Mohamed ("Mohamed"), served as a temporary

9    manager during that time, and Ms. Smith's team finished Q2 81% to plan, on which Ms.

10    Smith was paid commission per her 2019 compensation plan, despite being on FMLA

11    leave.

12    23.    In late July 2020, Ms. Smith noticed her health begin to decline even further amidst

13    the relentless pressure to sell, lead the team, and conduct countless collection and

14    customer billings calls. She emailed HR Manager, Susie Stormann ("Stormann"), and her

15    boss, Jeff Thompson ("Thompson") to explain that she needed an accommodation to avoid

16    going back on FMLA leave.

17    24.    Ms. Smith's request was ignored by both Stormann and Thompson, and no

18    explanation or reason was provided. Ms. Smith wrote to them a second and third time, but

19    those communications were also ignored.

20    25.    In early August 2020, Thompson became visibly upset with Ms. Smith during team

21    Zoom calls. He spoke over Ms. Smith, and was argumentative, critical, and dismissive of

22    Ms. Smith's contributions. He started leaving her out of important leadership emails and

23    decision-making, including the preparation for the annual sales meeting in Q4.

24    26.    At that point, Thompson directed Ms. Smith to stop focusing on new hire training and

1   to sell product, as he would not be adjusting the target anymore. Thompson began to scold

2   Ms. Smith for having one-on-one meetings with her team and other managers, and told her,

3   "There is not time for anything but selling."

4   27.    In late September 2020, one of Ms. Smith's senior sales reps quit. Ms. Smith

5   informed Thompson that her health was deteriorating, and taking on the full region, the

6   region of the departed sales rep, and managing the team was too much. She requested

7   permission from Thompson to hire a temp or allow for increased headcount to decrease her

8   workload. Thompson refused, and instead increased Ms. Smith's quotas and performance

9   metrics targets.

10   28.    Ms. Smith requested in the alternative that Thompson permit her to return to the role

11   she had prior to taking FMLA leave. Prior to taking leave, Ms. Smith was not a sales rep,

12   but a manager. Thompson responded that Ms. Smith would not be allowed to go back to

13   her previous role, and said that it was "too bad," she "asked for it," and if she couldn't

14   handle it, maybe she should "re-evaluate her career choices."

15   29.    Ms. Smith submitted three formal complaints of harassment against Thompson, but

16   none of them were acknowledged. Thompson was aware of the complaints, though, and his

17   hostility towards Ms. Smith was obvious.

18   30.    In October 2020, just as Ms. Smith feared, the stress of the job and Thompson's

19   harassment affected her health and she was forced to go on FMLA leave again, beginning

20   October 14, 2020.

21   31.    While Ms. Smith was on authorized FMLA leave, Thompson continued to harass her.

22   He sent Ms. Smith a lengthy email and formal performance evaluation, warning that she

23   needed to hit a company-wide record booking number of $9.2 million by December 31,

24   2020. Thompson was giving Ms. Smith an arbitrary and unattainable target. Thompson did

**FIRST AMENDED COMPLAINT**                                                                                6

1   not issue this warning to any other managers, even though others had performance issues.

2   He also did not ask other employees to achieve $9.2 million in bookings.

3   32.     Around the same time, Thompson also tripled Ms. Smith's workload and notified her

4   that she would not be paid according to company plan.

5   33.     In November 2020, Ms. Smith's doctor recommended her medical leave be

6   converted to intermittent leave for three weeks, in which she would work six hours per day.

7   When her Lymphedema failed to resolve, Ms. Smith's doctor reduced the recommendation

8   to four hours per day.

9   34.     Thompson refused to discuss accommodations with Ms. Smith and refused to

10  respond to emails or correspondence related to Ms. Smith's FMLA designation. Thompson

11  began to exclude Ms. Smith from meetings and remove responsibilities that were under her

12  purview for years.

13  35.     On December 15th, HR responded to Ms. Smith's request for an extension of her

14  intermittent leave with an ultimatum: either she returned to work full-time, or take full leave,

15  which would result in exhausting her FMLA leave entirely. HR also said, without providing

16  justification, that they would no longer be accommodating the intermittent schedule ordered

17  by Ms. Smith's doctors.

18  36.     Ms. Smith was not medically cleared to return to work full-time, so she had no choice

19  but to exhaust her FMLA leave. This put Ms. Smith in a precarious position, as she still

20  needed leave to care for herself and her son from time to time but would no longer be

21  eligible for FMLA leave. Ms. Smith was forced to take full FMLA leave through January 6,

22  2021.

23  37.     Around the same time, Thompson alluded to interviewing a manager for Ms. Smith's

24  role, despite the purported hiring freeze, and even though there were no posted openings

**FIRST AMENDED COMPLAINT**                                                                          7

1 for her job.

2 38. When Ms. Smith returned to work on January 9, she, Stormann, and Thompson had

3 a 90-minute telephone call which Ms. Smith thought was to discuss the three formal

4 complaints she had filed. Thompson, however, said he had never seen the complaints and

5 did not know what Ms. Smith was referring to.

6 39. On the call, Ms. Smith stated her concerns about retaliation related to her FMLA

7 leave, her inflated telephone activity requirements, and the elimination of her managerial

8 duties, which was practically a demotion. Thompson insisted that Ms. Smith was being

9 disciplined because she was a "poor performer," and "didn't do the work."

10 40. Ms. Smith did not agree with what was tantamount to a demotion, and said she

11 would need to get back to them.

12 41. During that time, she submitted paperwork for Paid Family Leave but nobody got

13 back to her, so she was unpaid for two weeks.

14 42. On January 30, 2021, Ms. Smith received an email from Thompson saying that Ms.

15 Smith would not get her full commissions earned for Q4, because she was on leave, and

16 that her pay would be calculated on a "guesstimate of time worked," rather than on

17 bookings.

18 43. Ms. Smith notified HR immediately, and, after several days, finally received a reply

19 from Stormann which referenced Ms. Smith's compensation plan with Lumenis and stated

20 that Lumenis could change commission payouts at any time. The compensation plan in

21 reference was from 2019, and should have expired on December 31, 2019.

22 44. Ms. Smith had been asking for compensation plans for 2020 for an entire year, but

23 they were never provided. Without a compensation plan in writing, Thompson could move

24 the quarterly quota to any number he chose, for example, the $9.2 million quota Thompson

set in Q4 of 2020. Ms. Smith pointed this out, but her complaint was ignored.

45.     Ms. Smith wrote three letters to HR, pointing out that it had not been her choice to go on full FMLA leave. Additionally, Ms. Smith pointed out that since she was put on forced leave on December 15th, she had worked the majority of the quarter, and the subsequent bookings in Q4 were the direct result of her work.

46.     In late February, Ms. Smith requested family leave to care for her son. Her request was denied, and HR informed her she would have to take unpaid leave. Ms. Smith exhausted her vacation time, but the remainder of her family care leave was unpaid.

47.     She returned to work on February 26, 2021. Ms. Smith requested a brief re-acclimation period in which she could return with manageable daily performance expectations for the first seven to ten days on the job, but there was no response, and Thompson said her request was being reviewed by the legal team.

48.     Stormann and Thompson had a call with Ms. Smith the day she returned to discuss how her duties had changed. They informed Ms. Smith that she was to be a full-time telephone sales representative, and that her pay was being cut. She would not get the marketing budget she had requested, and she would not be handling marketing tasks any longer. She was relieved of her training duties as well. Finally, Stormann and Thompson informed Ms. Smith that she would only receive a third of her commission for Q1. There was no explanation for that decision.

49.     On March 3, 2021, Thompson sent Ms. Smith an email asking what she had been doing and why there were no relevant activities to close business so far. During Ms. Smith's first few days back, she was hosting meetings with her team members and was introduced to a new hire who was brought on during her absence. Ms. Smith had a lengthy meeting with senior administrative staff, a call with the Regional Services Manager, and two

1   company-wide calls. She had also reviewed the previous quarter's sales, booking reports,

2   outbound calling activity reports, team dashboards, and availability opportunities to close.

3   When Ms. Smith informed Thompson of what she had been doing, he rolled his eyes and

4   said she needed to be on the phones selling.

5   50.   Prior to Ms. Smith's FMLA leave, she was not an inside salesperson, but a manager.

6   After taking FMLA leave, she returned to an entirely different job.

7   51.   Thompson said Ms. Smith's performance was sub-par and gave her a warning,

8   stating it was "her choice not to hit the numbers" (although she was on leave for most of the

9   quarter). Ms. Smith said she was doing the very best that she could but could not let her

10   health suffer so needed some time to acclimate back into the role. Thompson said Ms.

11   Smith was not doing enough and continued to have a hostile and exasperated tone with her

12   every time she mentioned her medical issues or FMLA leave.

13   52.   Thompson was basing Ms. Smith's 2020 employee performance review on a full

14   year, while Ms. Smith only worked Q1 and Q3. He was also threatening not to pay Ms.

15   Smith commission claiming she "does not deserve it because she was out so much on

16   leave."

17   53.   During a call on March 5, 2021, Thompson told Ms. Smith her activity must increase

18   from her usual 17 customer calls daily to 55 customer calls. This standard was not applied

19   to anyone else on the team, and when Ms. Smith asked why not, Thompson said he was

20   satisfied with their performance and only Ms. Smith had not delivered in 2020, ignoring that

21   she was on and off leave for nearly half the year.

22   54.   In March 2021, Boston Scientific announced an agreement to acquire the Lumenis

23   Surgical Business unit.

24   55.   On August 26, 2021, Ms. Smith informed Lumenis that her doctor provided her with

**FIRST AMENDED COMPLAINT**　　　　　　　　　　　　　　　　　　　　　　10

1    a plan to return to work on August 30, with her hours gradually increasing back to full-time.

2    56.     Stormann informed Ms. Smith that she would no longer be working at Lumenis, and

3    would be moving to Boston Scientific. She told Ms. Smith to work with the Boston Scientific

4    HR team regarding her return-to-work plan.

5    57.     In the past, when Ms. Smith was on leave, Lumenis would provide a report

6    confirming she was on designated medical leave. Lumenis did not provide the report for

7    Ms. Smith's leave and gradual return to work plan for August 30. Ms. Smith requested the

8    report twice and Lumenis refused to provide it.

9    58.     Ms. Smith continued to follow up and ask for the status of her employment, but did

10   not hear anything until September 16—more than two weeks after her return to work date

11   on August 30.

12   59.     On September 16, Ms. Smith began working at Boston Scientific. At that time, there

13   was no team for her to manage.

14   60.     The team Ms. Smith, hired, trained, and managed still exists at Lumenis. At the time

15   Ms. Smith was transferred, that team did not have a manager.

16   61.     Here, Lumenis failed to accommodate Ms. Smith by not allowing her to take

17   intermittent FMLA leave per her doctor's orders, without providing any justification for why

18   such accommodation would cause an undue hardship. Lumenis also failed to engage in a

19   good faith, interactive process with Ms. Smith to determine reasonable accommodations

20   that would allow her to perform her job duties, and ignored Ms. Smith each time she asked

21   to discuss potential accommodations.

22   62.     Thompson deliberately set Ms. Smith up to fail, held her to different standards, and

23   demoted her by removing her supervisory responsibilities and approval authority without

24   justification.

**FIRST AMENDED COMPLAINT**                                                                     11

63.    The company discriminated and retaliated against Ms. Smith on the basis of her disability, and for taking leave, by holding her to different standards than others, disciplining her, demoting her to a sales position, decreasing her compensation, and warning her that she was underperforming during a time that she was on approved medical leave.

64.    Lumenis' final act of retaliation was to remove Ms. Smith from the company, even though her team and her role still exist.

65.    The above allegations are incorporated by reference in each and every cause of action stated below.

## FIRST CAUSE OF ACTION

### Disability Discrimination in Violation of FEHA

66.    Defendant is an employer as defined by FEHA.

67.    At all relevant times herein, Plaintiff was employed by Defendant.

68.    Defendant knew that Plaintiff had a disability as defined by FEHA.

69.    Plaintiff was able to perform her essential job duties with reasonable accommodation for her disability.

70.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to: discipline, a demotion, decreased compensation, and changing the terms and conditions of her employment.

71.    Defendant also held Plaintiff to different standards than other similarly situated employees.

72.    Plaintiff's disability was a substantial motivating reason for Defendant's actions.

73.    Plaintiff was harmed.

74.    Defendants unlawful conduct, as alleged herein, was a substantial factor in causing Plaintiff's harm.

1

**SECOND CAUSE OF ACTION**

2

**Failure to Accommodate in Violation of FEHA**

3  75.    Defendant is an employer as defined by FEHA.

4  76.    At all relevant times herein, Plaintiff was employed by Defendant.

5  77.    Defendant knew that Plaintiff had a disability as defined by FEHA.

6  78.    Plaintiff was able to perform her essential job duties with reasonable accommodation

7  for her disability.

8  79.    Defendant failed to provide reasonable accommodation for Plaintiff's disability.

9  80.    Plaintiff was harmed.

10  81.    Defendant's failure to provide reasonable accommodation, as alleged herein, was a

11  substantial factor in causing Plaintiff's harm.

12

**THIRD CAUSE OF ACTION**

13

**Failure to Engage in the Interactive Process in Violation of FEHA**

14  82.    Defendant is an employer as defined by FEHA.

15  83.    At all relevant times herein, Plaintiff was employed by Defendant.

16  84.    Defendant knew that Plaintiff had a disability as defined by FEHA.

17  85.    Plaintiff requested that Defendant make a reasonable accommodation for her

18  disability so that she would be able to perform the essential job requirements.

19  86.    Plaintiff was willing to participate in an interactive process to determine whether

20  reasonable accommodation could be made so she would be able to perform those

21  essential job requirements. Plaintiff emailed Defendant and requested accommodations to

22  initiate the interactive process.

23  87.    Defendant failed to participate in a timely good-faith interactive process with Plaintiff

24  to determine whether reasonable accommodation could be made. Defendant never

1   responded to Plaintiff's requests for reasonable accommodation.

2   88.   Plaintiff was harmed.

3   89.   Defendant's failure to engage in a timely good-faith interactive process, as alleged

4   herein, was a substantial factor in causing Plaintiff's harm.

5   **FOURTH CAUSE OF ACTION**

6   **Retaliation in Violation of FEHA**

7   90.   Plaintiff engaged in protected activity by notifying Defendant of discrimination, failure

8   to accommodate, and failure to engage in the interactive process.

9   91.   Defendant subjected Plaintiff to adverse employment actions, including but not

10  limited to: discipline, a demotion, decreased compensation, and changing the terms and

11  conditions of her employment.

12  92.   Plaintiff's protected activity was a substantial motivating reason for Defendant's

13  adverse employment actions.

14  93.   Plaintiff was harmed.

15  94.   Defendant's adverse employment actions were a substantial factor in causing her

16  harm.

17  **FIFTH CAUSE OF ACTION**

18  **Violation of CFRA Rights**

19  95.   Plaintiff was eligible for family care and medical leave.

20  96.   Plaintiff requested and took leave for Plaintiff's own serious health condition that

21  made her unable to perform the functions of her job with Defendant.

22  97.   Plaintiff requested leave to care for her child, who had a serious health condition.

23  98.   Plaintiff provided reasonable notice to Defendant of her need for family care and

24  medical leave, including its expected timing and length.

**FIRST AMENDED COMPLAINT**                                              14

99.    Defendant refused to grant Plaintiff's request for family care leave entirely.

100.    Defendant refused to grant Plaintiff's request for intermittent medical leave.

101.    When Plaintiff had exhausted her medical leave, Defendant refused to return Plaintiff to the same or comparable job by demoting her from a management position to a sales position and decreasing her compensation.

102.    Plaintiff was harmed.

103.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## SIXTH CAUSE OF ACTION

### CFRA Rights Retaliation

104.    Plaintiff was eligible for family care and medical leave.

105.    Plaintiff requested family care and medical leave and took medical leave.

106.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to: discipline, a demotion, decreased compensation, and changing the terms and conditions of her employment.

107.    Plaintiff's request for and taking of family care and medical leave was a substantial motivating reason for the adverse employment actions.

108.    Plaintiff was harmed.

109.    Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

## SEVENTH CAUSE OF ACTION

### FMLA Interference

110.    Plaintiff had a serious health condition that made her unable to perform functions of her job with Defendant.

111.    Plaintiff was eligible for FMLA leave.

112.    Plaintiff provided reasonable notice to Defendant of her need for FMLA leave.

113.   Defendant denied Plaintiff her requested intermittent FMLA leave.

114.   Defendant refused to reinstate Plaintiff to the same or comparable job when her leave ended by demoting her from a management position to a sales position and decreasing her compensation.

115.   Plaintiff was harmed.

116.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

**EIGHTH CAUSE OF ACTION**

**FMLA Retaliation**

117.   Plaintiff was eligible for FMLA leave.

118.   Plaintiff requested and took FMLA leave.

119.   Defendant subjected Plaintiff to adverse employment actions, including but not limited to: discipline, a demotion, decreased compensation, and changing the terms and conditions of her employment.

120.   Plaintiff's request for and taking of FMLA leave was a substantial motivating reason for the adverse employment actions.

121.   Plaintiff was harmed.

122.   Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

**NINTH CAUSE OF ACTION**

**Retaliation in Violation of Labor Code §1102.5**

123.   At all relevant times herein, Plaintiff was employed by Defendant.

124.   Plaintiff engaged in protected activity by filing complaints of discrimination, failure to accommodate, failure to engage in the interactive process, failure to grant medical or family leave, and retaliation for taking medical or family leave.

125.   Defendant subjected Plaintiff to adverse employment actions, including but not

1   limited to: discipline, a demotion, decreased compensation, and changing the terms and

2   conditions of her employment.

3   126.   Plaintiff's complaints of unlawful conduct in the workplace and requests for

4   reasonable accommodation for her disability were a motivating reason for the adverse

5   employment actions.

6   127.   Plaintiff was harmed.

7   128.   Defendant's unlawful conduct, as alleged herein, was a substantial factor in causing

8   Plaintiff's harm.

9   **PRAYER FOR RELIEF**

10   WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

11   1.   For an award of damages to Plaintiff against Defendant, including

12   compensatory damages, economic damages, emotional and physical distress, and for any

13   punitive or penalty damages allowed under California law;

14   2.   All applicable statutory penalties;

15   3.   Costs and expenses of this action incurred herein, including reasonable

16   attorneys' fees and expert fees;

17   4.   A declaratory judgment that Defendant discriminated against and retaliated

18   against Plaintiff in violation of FEHA;

19   5.   Pre- and post-judgment interest, as provided by law;

20   6.   For an order awarding Plaintiff liquidated damages pursuant to 29 U.S.C.

21   §2617(a)(1)(A)(iii);

22   7.   Exemplary damages; and

23   8.   Any and all such other and further legal and equitable relief as this Court deems

24   necessary, just and proper.

**FIRST AMENDED COMPLAINT**         17

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff hereby demands a jury trial on all causes of action and claims to which she

3 has a right to jury trial.

4 Date: November 10, 2021                          HOYER & HICKS

5

6 

7                                                          _____
                                                         Richard A. Hoyer
8                                                          Attorneys for Plaintiff
                                                         JENNIFER SMITH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24